# UNITED STATES DISTRICT COURT
## for the
### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe the object or property to be used for tracking)*<br><br>THE 2018 TOYOTA RAV4 BEARING NORTH CAROLINA REGISTRATION NUMBER JFJ4117 AND VEHICLE IDENTIFICATION NUMBER JTMWFREV4JD115826 | )<br>)<br>)<br>) Case No. 1:23MJ111-1<br>)<br>)<br>) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. §§ __846 and 841(a)(1)__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☒ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other: Click or tap here to enter text.

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☒ evidence of a crime;

☒ property designed for use, intended for use, or used in committing a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☒ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both: THE 2018 TOYOTA RAV4 BEARING NORTH CAROLINA REGISTRATION NUMBER JFJ4117 AND VEHICLE IDENTIFICATION NUMBER JTMWFREV4JD115826.

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: __Click or tap here to enter text.__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/Clarence Spragins
*Applicant's signature*

Clarence Spragins, DEA Special Agent
*Applicant's printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this application and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: __March 8, 2023   2:52 pm__
City and state: __Durham, North Carolina__

Joe L. Webster, U.S. Magistrate Judge

THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF THE 2018 TOYOTA RAV4 BEARING NORTH CAROLINA REGISTRATION NUMBER JFJ4117 AND VEHICLE IDENTIFICATION NUMBER JTMWFREV4JD115826 | 1:23MJ111-1 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A TRACKING WARRANT

I, Special Agent Clarence Spragins, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am investigating a conspiracy to distribute controlled substances by Cye Frasier, Carlisa Allen and others in the Middle District of North Carolina. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device in or on a blue 2018 Toyota Rav4, bearing North Carolina registration JFJ4117, and Vehicle Identification Number JTMWFREV4JD115826 (Subject Vehicle) registered to Carlisa Allen. Allen resides in an apartment located at a complex at Timber Hollow Court, Chapel Hill, NC 27514.

2. There is probable cause to believe that the Subject Vehicle is being used in furtherance of a conspiracy to distribute controlled substances by

Frasier, Allen, and unknown others in violation of Title 21 U.S.C §§ 841(a) and 846 and that the installation of a tracking device on the Subject Vehicle will constitute or yield evidence of those crimes.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## AGENT BACKGROUND AND EXPERIENCE

4. I am a Special Agent of the Drug Enforcement Administration (DEA). I have been sworn as a Special Agent since graduating from the DEA Basic Agent Training academy in 2019. As a DEA Special Agent, I have participated in investigations involving, but not limited to, physical and electronic surveillance, financial analysis, undercover transactions, confidential sources, court orders, court testimony, arrests, search warrants, and seizure of evidence. Prior to joining the DEA, I served as a sworn law enforcement officer in the state of North Carolina from 2015 until 2019, having been employed by North Carolina Alcohol Law Enforcement (ALE) as a special agent and by Henderson Police Department as a police officer.

## INVESTIGATION

5. In 2022, Orange County (NC) Sheriff's Office (OCSO) Investigators were informed by Cooperating Defendant One[1] (CD1) that an individual, identified as Cooperating Defendant Two (CD2) is a cocaine distributor in Chapel Hill, NC. CD1 provided a telephone number for CD2 (CD2 Telephone).

6. In October 2022, CD1, at the direction and control of OCSO Investigators, conducted a controlled purchase of cocaine from CD2. In the days leading up to the controlled purchase, CD1 communicated with CD2 via Snapchat and CD2 Telephone in order to negotiate the purchase. The following subparagraphs document an overview of the controlled purchase event. Times are approximate.

    a. At 12:30 p.m., OCSO investigators met with CD1 at a predetermined briefing location in Orange County, NC. OCSO investigators searched CD1 and CD1's vehicle for contraband and found none. OCSO equipped CD1 with electronic monitoring capability and issued CD1 United States Currency in OCSO official advanced funds (OAF). OCSO investigators then followed

---

[1] During an investigation into the distribution of controlled substances on and around college campuses in Orange and Durham Counties, DEA investigators identified CD1 as a distributor of multiple drugs, including LSD. Agents approached CD1 and CD1 agreed to cooperate. CD1 cooperated with the hope that such cooperation would result in a favorable resolution for CD1's criminal conduct. CD1 has not been charged to date.

CD1 directly to a parking lot at a residential address in Chapel Hill, NC.

b. At 1:00 p.m., CD2 walked from the residence and entered CD1's vehicle. CD1 gave CD2 the issued OAF and CD2 gave CD1 a plastic bag containing cocaine. After a brief conversation, CD2 exited CD1's vehicle.

c. OCSO Investigators followed CD1 directly back to the predetermined brief location. CD1 produced the item purchased from CD2. OCSO Investigators searched CD1 and CD1's vehicle for contraband and currency and found none. CD1 was released and the operation concluded.

d. OCSO investigators conducted a presumptive field test of the item purchased from CD2. The result of the test indicated the item contains cocaine.

7. T-Mobile records for CD2 Telephone identify the subscriber as CD2. The records also show that two days prior to the aforementioned controlled purchase, and on other dates, CD2 Telephone was in contact with Subject Telephone 1.

8. Venmo records obtained in late 2022 for Cye Frasier's account list his number as Subject Telephone 1. In 2014, Cye Frasier was convicted of two counts of possession with intent to manufacture/sell/deliver a controlled

substance in violation of N.C.G.S. § 90-95(a)(1). While on probation for these offenses from September 2014 to October 2016, Frasier provided his phone number as Subject Telephone 1. T-Mobile records show that Subject Telephone 1 is currently subscribed to a woman (not Carlisa Allen) and has been since January 4, 2021.

9. In 2022, following the aforementioned controlled purchase, CD2 provided CD1 Subject Telephone 1 and told CD1 that the user of Subject Telephone 1 is a cocaine distributor.

10. In November 2022, CD1, at the direction of OCSO Investigators, began a dialogue with the user of Subject Telephone 1. The dialogue is summarized as follows:

   a. CD1 texted Subject Telephone 1 and explained how CD1 obtained Subject Telephone 1. In response, the user of Subject Telephone 1 asked CD1 to "FaceTime me". The user of Subject Telephone 1 then texted to CD1 that CD1 would be contacted from a different telephone number.

   b. CD1 received a FaceTime video call from Subject Telephone 2. The FaceTime video user of Subject Telephone 2, a black male, asked how much CD1 wanted. CD1 specified a quantity. The user of Subject Telephone 2 asked CD1 what CD1 wanted. CD1 indicated CD1 wanted to purchase cocaine. The user of Subject Telephone 2

then stated he would be in Chapel Hill and asked CD1 to meet somewhere on Franklin Street or on "Frat Court".

c. Following the FaceTime conversation, the user of Subject Telephone 1 began to communicate with CD1 and indicated a meeting could take place. The user of Subject Telephone 1 indicated he wanted to meet CD1 for introductory purposes, and that he did not want to conduct a transaction. A short time later, the user of Subject Telephone 1, who had a male voice which matched the voice of the aforementioned FaceTime video user, called CD1 and explained that he (Subject Telephone 1 user) spoke with someone who vouched for CD1. The user of Subject Telephone 1 indicated a transaction could potentially occur at a future time. The user of Subject Telephone 1 then told CD1 to let him know when CD1 was ready to meet.

11. Investigators debriefed CD1 regarding the above communication. CD1 stated that the individual who used Subject Telephone 1 and Subject Telephone 2 (to communicate via FaceTime video) was probably the same individual. CD1 described the individual as an older black man. Investigators showed CD1 an unmarked photograph of Frasier and CD1 stated that the photographed individual resembled the individual who utilized FaceTime video on Subject Telephone 2.

12. T-Mobile records for Subject Telephone 2 identify the subscriber as Carlisa Allen since February 2020. These records show that Subject Telephone 2 and Subject Telephone 1 are in frequent contact. As recorded in a Durham Police Department report from 2022, Allen reported that she was robbed of $2,000 in cash after picking the money up from Frasier at his barbershop, Lyons Den Barbershop. According to North Carolina Secretary of State business registration records, Frasier is the owner of Lyons Den Barber Shop and Beauty Salon, LLC, which is located at 1401 Morehead Avenue, Durham, NC.

13. In January 2023, DEA Investigators reviewed information contained within the Apple account used by CD2. This information was obtained pursuant to a search warrant signed by a North Carolina Superior Court Judge in Orange County, NC. Located within this data are numerous iMessages between CD2 and the user of Subject Telephone 1 which indicate that the Subject Telephone 2 and Subject Telephone 1 have coordinated the distribution of cocaine to CD2. For example:

    a. In April 2022, CD2 requested cocaine from the user of Subject Telephone 1. Subject Telephone 1 user stated the price is "80 a g" and requested cash payment. Subject Telephone 1 user directed CD2 to meet at "Frat court" and that he/she would be traveling in a blue Toyota Rav4. Shortly thereafter, CD2 advised that CD2 was

present at Frat Court. In response, the user of Subject Telephone 1 stated that "she coming" and "she there".

b. In September 2022, CD2 requested cocaine from the user of Subject Telephone 1. Subject Telephone 1 user stated he/she would accept cash and that he/she was traveling in a blue Toyota Rav4. Subject Telephone 1 user directed CD2 to go "outside" and that CD2 would "see her". Subject Telephone 1 user provided Subject Telephone 2 to CD2 and directed CD2 to "call her". Shortly thereafter, Subject Telephone 1 user asked CD2 if CD2 "get it" and CD2 affirmed and thanked the user of Subject Telephone 1.

14. According to North Carolina Division of Motor Vehicles, Carlisa Allen is the registered owner of a 2018 Toyota Rav4, NC plate JFJ4117 (Subject Vehicle).

15. In February 2023, DEA Investigators conducted surveillance at Timber Hollow Apartments in Chapel Hill, NC. Investigators located the Subject Vehicle. At approximately 8:15 a.m., a black woman exited an apartment building, entered the Subject Vehicle, and drove away. The black woman appeared to be approximately 40 years old and had blonde hair.

16. In February 2023, DEA Investigators interviewed CD2.[2] CD2 admitted to using and selling cocaine and marijuana. CD2 described CD2's suppliers of cocaine and marijuana as a middle-aged black man and his girlfriend, a middle-aged black woman, who travel in a blue Toyota Rav4. CD2 stated the "girlfriend" currently has blonde hair. Investigators produced photographs of Cye Frasier and Carlisa Allen. CD2 stated the photographed individuals appear to be CD2's suppliers of cocaine and marijuana. CD2 stated the man (Frasier) uses Subject Telephone 1. CD2 stated the male prefers to conduct drug transactions either at Frat Court in Chapel Hill or elsewhere near the University of North Carolina - Chapel Hill (UNC) campus. CD2 stated that to arrange drug transactions, CD2 typically only communicates with the user of Subject Telephone 1, who CD2 believes to be the man (Frasier). CD2 also stated that more often than not, the woman meets CD2 to conduct the transaction. CD2 stated that when the woman (Allen) meets CD2 to conduct transactions, communication with the man (Frasier) to facilitate the transaction is sometimes confusing because he (Frasier) has to direct both his girlfriend (Allen) and CD2 where and when to meet without being present. CD2 stated they (Frasier and Allen) always operate a blue Toyota Rav4 to conduct

---

[2] Agents approached CD2 and CD2 agreed to cooperate. CD2 cooperated with the hope that such cooperation would result in a favorable resolution for CD2's criminal conduct. CD2 has not been charged to date.

drug transactions. CD2 stated the largest quantity of cocaine observed in his (Frasier) or her (Allen) possession was a baseball-sized amount of cocaine in the glove box of the Toyota Rav4. CD2 stated CD2 believes he (Frasier) prefers to conduct transactions on Frat Court because they (Frasier or Allen) can meet with multiple customers at one location. CD2 specified that the other customers appear to be fraternity members who reside at fraternity houses on Frat Court, because CD2 has witnessed individuals walk to and from the fraternity houses to the Toyota Rav4 to conduct transactions immediately before and after CD2's transactions with Frasier or Allen. CD2 stated that on one occasion, both of them (Frasier and Allen) were present when he (Frasier) delivered cocaine to CD2. CD2 stated that he (Frasier) accepts Venmo, CashApp, and cash for drug payment.

17. CD2 showed investigators an iMessage conversation between CD2 and the user of Subject Telephone 1, which occurred in early February 2023. CD2 stated that as a result of the conversation, CD2 purchased cocaine from the woman (Allen). The conversation is summarized as follows:

    a. CD2 requests a quantity of cocaine from the user of Subject Telephone 1. The user of Subject Telephone 1 directs CD2 to go to a location in the vicinity of Church Street and Rosemary Street in Chapel Hill.

b. The user of Subject Telephone 1 directs CD2 to locate a "blonde hair black girl".

c. The user of Subject Telephone 1 states "wait she has to go get more". CD2 then re-states the amount of cocaine CD2 wants to purchase and the amount CD2 will pay.

d. The user of Subject Telephone 1 states "She in a blue rav 4 Toyota" and asks "U saw her". CD2 affirms and thanks the user of Subject Telephone 1.

18. In February 2023, CD2, at the direction and control of OCSO Investigators, conducted a controlled purchase of cocaine from Frasier. Leading up to the controlled purchase, CD2 communicated with the user of Subject Telephone 1 in order to negotiate the purchase. The following subparagraphs document an overview of the controlled purchase event. Times are approximate.

a. At 2:30 p.m., OCSO investigators met with CD2 at a predetermined briefing location in Orange County, NC. OCSO investigators searched CD2 for contraband and found none. OCSO equipped CD2 with electronic monitoring capability and issued CD2 United States Currency in OCSO official advanced funds (OAF).

b.  At 5:00 p.m., OCSO investigators transported CD2 to a parking lot in the vicinity of Franklin Street and Church Street, Chapel Hill, NC. Investigators maintained continuous surveillance of CD2 throughout the operation.

c.  At 5:00 p.m., CD2 received a phone call from the male user of Subject Telephone 1 who stated he first needed to stop at his residence to "get it" and that he would then be on the way to CD2's location.

d.  At 5:10 p.m., DEA investigators observed the Subject Vehicle enter and park in the lot of the Timber Hollow Apartments in Chapel Hill. Allen, now with black hair exited the Subject Vehicle and walked toward building 104. At 5:18 p.m., DEA investigators observed Allen re-enter the Subject Vehicle and depart the area.

e.  Investigators maintained continuous surveillance of the Subject Vehicle and followed it directly to CD2's location. Also at this time, CD2 received a phone call from the male user of Subject Telephone 1 who stated that the woman was on the way to CD2's location.

f.  Investigators observed the Subject Vehicle arrive at CD2's location. Investigators observed CD2 enter the Subject Vehicle. CD2 gave Allen, the sole occupant of the vehicle, the issued OAF,

and in return Allen gave CD2 cocaine. CD2 exited the Subject Vehicle and the Subject Vehicle departed the area.

g. OCSO Investigators transported CD2 directly back to the predetermined brief location. CD2 produced the item purchased from Allen. OCSO Investigators searched CD2 for contraband and currency and found none.

h. OCSO Investigators interviewed CD2 regarding the transaction. CD2 stated the black woman is the same woman (Allen) who has previously met CD2 in the Subject Vehicle and sold CD2 cocaine. CD2 noted that the woman changed her hair color to black and that it was recently blonde. CD2 stated that the woman's appearance changes sometimes. CD2 stated that the woman was on speaker phone with her boyfriend (Frasier) during the transaction. CD2 stated CD2 recognized the boyfriend's voice. CD2 stated that in the vehicle, CD2 exchanged the OAF for the drugs. CD2 reiterated that CD2 was not surprised that the female showed up instead of the male. CD2 stated CD2 never knows who will arrive and distribute the drugs, but that the user of Subject Telephone 1 always communicates as if the distributor will be the man (Frasier). CD2 stated the vehicle which is used to arrive with the drugs is always the Subject Vehicle.

  i. CD2 was released and the operation concluded.

  j. OCSO investigators conducted a presumptive field test of the item purchased from the black woman. The result of the test indicated the item contains cocaine. The item was entered into evidence at OCSO per OCSO policy.

19. The T-Mobile records for Subject Telephone 2 show that during the time frame CD2 made the transaction with Allen, as described in paragraph 23 above, Subject Telephone 2 was in contact with Subject Telephone 1.

## TRACKING WARRANT

20. I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the DEA or their authorized representatives, including other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the Subject Vehicle within the Middle District of North Carolina within 10 days of the issuance of the proposed warrant and to remove the tracking device from the Target Vehicle after the use of the tracking device has ended. I further request that the Court permit installation and removal of the tracking device during both daytime and nighttime hours so that investigators can perform these tasks when least likely to be seen or heard. I further request that the Court permit investigators to monitor the tracking device at all times for a period of 45 days from the date

the proposed warrant is issued, both within and outside the Middle District of North Carolina.

21. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the Court authorize delay of notification of the warrant for 30 days from the end of the authorized period of tracking. There is reason to believe that premature notification of the existence of the proposed warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to avoid prosecution, destroy or tamper with evidence, or change patterns of behavior.

## CONCLUSION

22. There is probable cause to believe that the Subject Vehicle is being used in furtherance of a conspiracy to distribute controlled substances by Frasier, Allen, and unknown others in violation of Title 21 U.S.C §§ 841(a) and 846 and that the installation of a tracking device on the Subject Vehicle will constitute or yield evidence of those crimes.

Respectfully submitted,

/s/Clarence S. Spragins
Clarence S. Spragins
Special Agent
Drug Enforcement Administration

On this 8th of March 2023, at 2:52 pm, Special Agent Clarence S. Spragins appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

Joe L. Webster
United States Magistrate Judge